AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Hawaii

**SEALED**
**BY ORDER OF THE COURT**

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII
Aug 25, 2025 12:00 PM
Lucy H. Carrillo, Clerk of Court

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| John Paul Luna | ) | MJ 25-01121 WRP |
| | ) | |
| | ) | **FILED UNDER SEAL PURSUANT TO** |
| Defendant(s) | ) | **CRIMLR5.2(a)(1)** |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 15, 2025__ in the county of __Honolulu__ in the
__--__ District of __Hawaii__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) | Possession with intent to distribute a controlled substance (50+ grams of methamphetamine) |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_/s/ Wesley Monaco_
Complainant's signature

DEA Special Agent Wesley Monaco
Printed name and title

Sworn to under oath before me telephonically, and attestation acknowledged pursuant to Fed.R.Crim.P. 4.1(b)(2).

Date: August 25, 2025

City and state: Honolulu, Hawaii

_/s/_
Wes Reber Porter
United States Magistrate Judge

Print  Save As...  Attach  Reset

KENNETH M. SORENSON
Acting United States Attorney
District of Hawaii

THOMAS MUEHLECK #3591
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 440-9271
E-mail: Tom.Muehleck@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAG. NO. MJ 25-01121 WRP |
| Plaintiff, | AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT |
| vs. | |
| John Paul LUNA, | |
| Defendant | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Wesley Monaco, being duly sworn telephonically, state the following is true and correct to the best of my knowledge and belief:

**INTRODUCTION**

1. This affidavit is submitted for the purpose of establishing probable

cause that on or about April 15, 2025, within the District of Hawaii, JOHN PAUL LUNA, the defendant possessed with intent to distribute controlled substances—specifically, 50 grams or more of methamphetamine—in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).   Methamphetamine is a Schedule II controlled substance.

## BACKGROUND

2.     I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Title 21 of the United States Code.

3.     I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been since December 2023.  As a Special Agent with DEA, my duties include the investigation of violations of federal laws concerning the transportation, importation, manufacture, possession, and distribution of controlled substances. I completed 17 weeks of Federal Law Enforcement Training, graduating from the DEA Basic Agent Training Program in December 2023, with training in legal, tactical, and investigative skills.  Before joining the DEA, I earned a B.A. in Political Science from St. Michael's College and an M.A. in Business and Organizational Security Management from Webster University.  I

also served 12 years as a U.S. Army Military Police Officer, with roles in command, investigation, and law enforcement.

4. In connection with my official duties, I investigate criminal violations of federal drug laws and related offenses-including violations of Title 21, United States Code, 801 et seq., and the Federal Controlled Substance Act. I am familiar with and have used many of the traditional methods of investigation, including, visual surveillance, informant and witness interviews, defendant debriefings, undercover operations, and the seizure of drug evidence. During my employment with DEA, I have become knowledgeable with the enforcement of Federal laws pertaining to narcotics and dangerous drugs. In particular, I have become versed in the methodology utilized in narcotics trafficking operations, the specific language used by narcotic traffickers, the unique trafficking patterns employed by narcotics organizations, and their patterns of drug abuse. My training and experience as a Special Agent, my participation in a multitude of investigations, and my interactions with other agents, as well as with other state and local law enforcement officer's familiar with drug investigations, form the basis of the opinions and conclusions set forth below, which I have drawn from the facts set forth herein.

5. This affidavit is based upon my personal knowledge, my review of

3

reports by other law enforcement officers, my communications with other law enforcement officers, information obtained from witnesses, and other evidence. It is intended to show merely that there is sufficient probable cause for the specified violations of federal law and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

1. In February 2025 the DEA and the Honolulu Police Department ("HPD") initiated a joint investigation into the narcotics activities of John Paul LUNA ("LUNA"). According to HPD, LUNA is a methamphetamine distributor primarily operating in the Waipahu, HI area.

**First of Two Controlled Purchases on April 15, 2025**

2. On April 15, 2025, in furtherance of a joint investigation, DEA along with narcotic investigators from HPD initiated surveillance of LUNA's residence located at/near 94-108 Kaaka Place, Waipahu, HI 96797 ("Target Residence") and observed LUNA's vehicle, a 2020 white colored Honda Civic bearing Hawaii license plate number WNS985 ("SUBJECT VEHICLE"), parked at the Target Residence. Also, during this time an HPD confidential source[1] (the "CS") and an

---

[1] Record checks indicate the CS has one previous felony charge and one misdemeanor charge but no conviction or disposition was recorded. The CS is currently not facing charges but is cooperating in hopes of receiving consideration with respect to charging and/or sentencing should CS be prosecuted in the future. CS is not charged

HPD undercover officer (the "UC") along with the CS' HPD handlers were meeting at an undisclosed neutral location in preparation to conduct a controlled purchase from LUNA. The CS and CS' vehicle were searched for contraband to which none were found. At the direction of HPD, the CS arranged with LUNA for the purchase of three ounces of methamphetamine for $750. The UC was outfitted with a transmitting and recording device.

3. Under constant surveillance, the CS while operating the CS vehicle with the UC in the passenger seat were followed to the Target Residence. Upon arrival, the CS and UC parked in the front area of the Target Residence. Investigators observed LUNA, exit the Target Residence, walk up to the CS and UC, and have a brief conversation with the CS and UC. During the conversation, LUNA handed a small brown bag to the CS and UC, in exchange for $750. After the conversation and exchange, LUNA returned to the Target Residence. The CS and UC then departed the area in the CS Vehicle and met with HPD handlers at an undisclosed neutral location. At the neutral location, the CS and UC provided HPD handlers with the small brown bag that LUNA provided to the CS and UC,

---

with any crime at this time but has made statements against CS's penal interest to investigators. Investigators are not aware of any inaccurate or unreliable information provided by CS and information provided by CS to date has been corroborated by information from public and law enforcement databases, telephone subscriber and telephone toll records, and physical surveillance, and has never been found to be false or misleading. For these reasons, I believe CS is reliable.

and explained that the UC was introduced to LUNA. Inside the brown bag was a clear Ziplock type plastic bag containing suspected methamphetamine. Subsequently, the CS and the CS' vehicle were once again searched for contraband to which none were found. The methamphetamine was processed into evidence and later given a net weight of 77.6 grams with 100% purity, plus or minus 7% and tested positive for the presence of methamphetamine hydrochloride by the DEA forensics lab.

4. The UC stated that LUNA said he could get additional methamphetamine and LUNA told the UC to meet him later that afternoon at LUNA's place of employment for the additional methamphetamine.

**Second of Two Controlled Purchases on April 15, 2025**

5. That same day, on April 15, 2025, the UC coordinated for the purchase of five ounces of methamphetamine for $750 from LUNA for later that same afternoon. Surveillance was established at a business parking lot located at/near 850 Kamehameha Highway, Pearl City, Hawaii 96782 (the "Buy Location") in anticipation of the second controlled purchase between LUNA and the UC that was coordinated for earlier in the day. Investigators observed LUNA's vehicle parked in the parking lot of the Buy Location. Also, during this time the HPD UC along with the HPD handlers were meeting at an undisclosed

neutral location in preparation to conduct a controlled purchase from LUNA. The HPD UC arranged with LUNA for the purchase of five ounces of methamphetamine for $750. The UC was outfitted with a transmitting and recording device.

6. Under constant surveillance, the UC while operating the UC vehicle was followed to the Buy Location. Upon arrival, the UC parked in the parking lot outside one of the businesses. Upon arriving, the UC called LUNA and was told to meet in the corner section of the parking lot between the buildings. The UC exited the UC vehicle and walked to the corner section of the buildings and waited for LUNA. Shortly after the phone call, investigators observed LUNA exit a business at the Buy Location and walk over to the SUBJECT VEHICLE and open the door. Investigators observed LUNA grab something small (object-1) from the SUBJECT VEHICLE and observed LUNA walk directly to the corner of the buildings to meet with the UC. The UC and LUNA had a brief conversation and then investigators observed LUNA hand the UC object -1, which was determined to be a toothpaste tube box and the UC handed LUNA $750. Following the meeting and exchange, investigators observed LUNA walk back into one of the businesses. The UC returned to the UC vehicle with object-1 and departed the area.

7. Under constant surveillance, the UC while operating the UC vehicle was followed from the Buy Location to an undisclosed neutral location. At the neutral location, the UC provided HPD handlers with object -1 a toothpaste box containing a clear Ziplock type plastic bag containing suspected methamphetamine. The methamphetamine was later processed and given a net weight of 133.0 grams with 100% purity, plus or minus 7% and tested positive for the presence of methamphetamine hydrochloride by the DEA drug analysis lab.

8. Between the two controlled purchases, LUNA sold approximately 210 grams of methamphetamine. I know from my training and experience that approximately 210 grams of methamphetamine is consistent with a distribution amount and is not consistent with a personal use amount.

## CONCLUSION

9. Based on the facts described above, and on my training and experience, I submit that there is probable cause that LUNA defendant possessed with intent to distribute controlled substances—specifically, 50 grams or more of methamphetamine—in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

DATED: Honolulu, Hawaii, August 25, 2025.

_____
Wesley Monaco
Special Agent, DEA

Sworn to under oath before me telephonically and attestation acknowledged pursuant to FRCP 4(d) and 4.1(b), on this 25 day of August 2025.

_____
Wes Reber Porter
United States Magistrate Judge

9